UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARINA CRUZ,

                  Plaintiff,

       -against-

LOCAL 32BJ and HARVARD
MAINTENANCE, INC.,

                Defendants,

**ORDER**

22 Civ. 3068 (PGG) (SDA)

PAUL G. GARDEPHE, U.S.D.J.:

        Pro se Plaintiff Carina Cruz brings claims pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL") against Defendants Harvard Maintenance, Inc. ("Harvard"), and Service Employees International Union, Local 32BJ (the "Union").  Plaintiff also brings a claim pursuant to Section 301 of the Labor Management Relations Act ("LMRA") against both Harvard and the Union for breach of a collective bargaining agreement.  (Am. Cmplt. (Dkt. No. 46) at 1, 5-6, 13)  The Court further construes the Amended Complaint as raising claims against the Union for (1) breaching its duty of fair representation pursuant to the National Labor Relations Act ("NLRA"); and (2) violating the Labor Management Reporting and Disclosure Act ("LMRDA").  (Id. at 6, 13-14)

        On March 27, 2023, Defendants moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Dkt. Nos. 50, 54)  On March 30, 2023, this Court referred Defendants' motions to Magistrate Judge Aaron for a report and recommendation ("R&R").  (Dkt. No. 61)  On September 9, 2023, Judge Aaron issued an R&R

recommending that this Court grant Defendants' motions to dismiss the Amended Complaint in their entirety.  Judge Aaron also recommends granting Plaintiff leave to amend.  (R&R (Dkt. No. 83))  Plaintiff and Defendant Harvard Maintenance filed objections to the R&R on October 16, 2023.  (Dkt. Nos. 89-90)

For the reasons stated below, Judge Aaron's R&R will be adopted in part. Harvard's motion to dismiss Plaintiff's retaliation claims under Section 1981, the NYSHRL, and the NYCHRL will be denied.  Defendants' motions to dismiss will be granted as to Plaintiff's remaining claims.

## BACKGROUND

### I.    FACTS

Plaintiff is a Hispanic woman who was born in the Dominican Republic.  (Am. Cmplt. (Dkt. No. 46) at 1)  She has been a member of the Union since 2004.  (Id.)  On January 1, 2024, Plaintiff began employment with Defendant Harvard Maintenance as a janitor in a building located at 300 Madison Avenue, New York, New York ("300 Madison" or the "Building"), pursuant to a collective bargaining agreement between Harvard and the Union (the "CBA").  (Id. at 1, ¶ 1; Cameron Decl., Ex. A (CBA) (Dkt. No. 51-1)).[1]

Plaintiff alleges that "[f]rom the beginning Harvard has discriminated against Hispanics" such as herself at 300 Madison, and that Harvard has engaged in "repeated acts of retaliation" against her for asserting her rights.  (Am. Cmplt. (Dkt. No. 46) at 3, ¶ 16; 5, ¶ 24) Plaintiff contends that Harvard "gives Albanian workers more favorable treatment than Hispanic

---

[1]  Cruz worked at 300 Madison for Harvard from September 2004 to April 2012, after which Harvard lost its contract and was replaced by ABM Industry Groups, LLC ("ABM"), another commercial cleaning service provider.  (Am. Cmplt. (Dkt. No. 46) at 1, ¶ 1)  Cruz thereafter worked at 300 Madison for ABM until December 31, 2019.  (Id.)  On January 1, 2020, Harvard once again took over the contract for cleaning services at the Building.  (Id.)

workers." (Id. at 5, ¶ 24)  Plaintiff also alleges that the Union has engaged in discrimination and retaliation against her and that it did not provide her with "the same fair representation as [her] co-workers."  (Id. at 9, ¶ 14)

When Harvard took over responsibility for cleaning services at the Building on January 1, 2020, it created a new Forelady position and chose Juliana Perdoda, an Albanian employee who was "new to the building," to fill the position.  (Id. at 1, ¶ 1)  Plaintiff alleges that Harvard failed to post notice of the Forelady position, in violation of the CBA.  (Id.)  Plaintiff also contends that "[t]he second day of Harvard being in the building they increased [the janitors'] already excessive workload by adding [a requirement that the workers] clean the refrigerators on each floor."  (Id.)  When Plaintiff "informed Perdoda that [she] was going to complain about [the added duties]," Perdoda told Plaintiff "to be careful [and] that it could get [Plaintiff] a warning or suspension."  (Id.)  Plaintiff alleges that in late January 2020, another Forelady position was created and a white male co-worker was chosen for the position.  The new Forelady position was again not posted.  (Id. at 1-2, ¶ 5)

Plaintiff filed complaints with the Union on January 6, 2020 and January 17, 2020 regarding the increased workload, the failure to post new positions, and the alleged harassment by Perdoda.  (Id., Ex. 7 (Jan. 6, 2020 Local 32BJ complaint) (Dkt. No. 46-1) at 10; id., Cmplt., Ex. 8 (Jan. 17, 2020 Local 32BJ complaint) (Dkt. No. 46-1) at 11)  On January 31, 2020, Plaintiff filed a complaint with the National Labor Relations Board ("NLRB") alleging that the Union "threaten[ed] that [Harvard] would retaliate against [employees] with respect to their employment if they complained about company practices or engaged in any other union or protected activity."  (Id., Ex. 9 (Jan. 31, 2020 NLRB complaint) (Dkt. No. 46-1) at 12)  Plaintiff alleges that after she filed these complaints, Harvard "started harassing [her]" by "increasing

[her] workload" and "sen[ding] co-workers to spy on [her] 3 or 4 times a night." (Am. Cmplt. (Dkt. No. 46) at 1, ¶ 4)

On February 10, 2020, Plaintiff "went to Harvard to complain about the two Albanian Foreladies Brelina Alajbegu and Juliana Perdoda" because "they were discriminating against and harassing" her. (Id. at 2, ¶ 5) She "expressed [her] concerns" to Maggie Calabrese, a Harvard human resources employee. According to Plaintiff, Calabrese "refused to take [Plaintiff's] complaint, [and] instead . . . told [Plaintiff] to go to the Union." (Id.) Plaintiff filed complaints with the Union on February 6 and February 21, 2020, alleging that "overtime work is not being fairly rotated among all employees" (id., Ex. 10 (Feb. 6, 2020 Local 32BJ complaint) (Dkt. No. 46-1) at 13), and further alleging that Harvard "discriminated against [Plaintiff] on the basis of [her] race." (Id., Ex. 11 (Feb. 21, 2020 Local 32BJ complaint) (Dkt. No. 46-1) at 14) Plaintiff also filed an additional complaint with the NLRB on February 25, 2020, in which she alleged that the Union was "refusing to process" her complaint regarding unfair assignment of overtime. (Id., Ex. 12 (Feb. 25, 2020 NLRB complaint) (Dkt. No. 46-1) at 15)

In a March 10, 2020 letter to Murat Mela, a Vice President at Harvard, the Union gave notice that Plaintiff "claim[ed] that [she is] being discriminated against on the basis of [her] race." (Id., Ex. 13 (Mar. 10, 2020 Ltr.) (Dkt. No. 46-1) at 16)

On March 16, 2020, most of the floors at 300 Madison were closed due to the Covid-19 pandemic. (Am. Cmplt. (Dkt. No. 46) at 2, ¶ 8) On March 17, 2020, Plaintiff filed a complaint with the Occupational Safety and Health Administration ("OSHA") in which she reported that Harvard "was not practicing social distancing and was not providing [employees] with masks." (Id.) On March 18, 2020, Plaintiff called "Harvard headquarters in Miami to

complain about the Covid situation and about the behavior of Alajbegu and Perdoda." (Id. at 2, ¶ 9) Plaintiff "left a voice message," but "never received a call back." (Id.)

Also on March 18, 2020, Plaintiff "voiced [her] opinion" to Perdoda that a coworker "should have gone home early like the rest of us." (Id.) Perdoda responded by telling Plaintiff that "it was [Perdoda's] call . . . and if [Plaintiff] didn't like it to go home." (Id.) Plaintiff then told Perdoda that Plaintiff "would report her." (Id.) In response, Perdoda "told [Plaintiff] to go home and not come back until [Plaintiff] went to Harvard's office." (Id.) Perdoda then "called security to get [Plaintiff] out of the Building." (Id.)

On March 19, 2020, Plaintiff spoke with Murat Mela. (Id. at 2, ¶ 10) Plaintiff "explained what happened" between her and Perdoda, and Mela "sent [Plaintiff] back to work." (Id.) After the meeting, Plaintiff also spoke with a co-worker named Ilka Feratovic, who told Plaintiff that "she was afraid to work on her floors since [they were] infected with covid-19." (Id.) Plaintiff told Feratovic "to do the work and [Plaintiff] would talk to the delegate." (Id.) Plaintiff alleges that she then had the following interaction with Forelady Alajbegu:

> Alajbegu came and accused me of interfering with a co-workers business, I told her I was comforting Feratovic because she was not feeling well. Alajbegu replied that if she was not feeling well she should be at the doctor's office. I then said I had the right to talk about working conditions. She was on the phone with [Murat] Mela and she told me he asked me to go home. I asked her to give me something in writing about the reason she was sending me home and she said no.

(Id.) Plaintiff "called Harvard" the following day but "no one returned [her] call." (Id.)

On March 20, 2020, Harvard sent home most of Plaintiff's co-workers due to COVID-19. (Id.) Plaintiff alleges that Harvard "laid off hundreds of members during the pandemic" in violation of the CBA. (Id. at 5, ¶ 25)

On April 1, 2020, Plaintiff filed a complaint with the Union claiming that she was "unjustly suspended indefinitely" on March 19, 2020. (Am. Cmplt., Ex. 15 (Apr. 1, 2020 Local

32BJ complaint) (Dkt. No. 46-1) at 19)  That same day, Johnny Herrera, a Union representative,

spoke with Mela about Plaintiff's suspension.  (Id., Ex. 16 (Apr. 1, 2020 Interview Notes) (Dkt.

No. 46-1) at 20)  Herrera's notes of his call with Mela indicate that Mela provided the following

explanation for the suspension:

> [Mela] stated that Harvard will not be bringing back [Cruz].  He stated that she
> was disruptive during a meeting [at] the workplace the first time.  She was sent
> home, he met with her the day after and asked her not to do it again.  She returned
> to work the day they met, and she became disruptive again and was removed.
> This time they will not be bringing her back and [are] not ready to resolve until
> the crisis at hand has gone away.

(Id.)

In an April 24, 2020 letter, Harvard notified Cruz that she was being temporarily

laid off in light of the COVID-19 pandemic.  (Am. Cmplt., Ex. 18 (Apr. 24, 2020 Ltr.) (Dkt. No.

46-1) at 23)  The letter states that "[t]his temporary layoff is being implemented in accordance

with the agreement reached between Harvard and Local 32BJ."  (Id.)  Plaintiff alleges, however,

that based on a conversation she had with Kyle Bragg, the President of the Union, in May 2021,

Harvard did not, in fact, "have an agreement with the Union due to Covid-19" and that "[t]he

lay-off implemented by Harvard is a violation of the CBA."  (Am. Cmplt. (Dkt. No. 46) at 3, ¶

12)

Plaintiff broadly contends that the Union failed to enforce the CBA and did not

adequately address many of the complaints that she made to the Union between 2020 and 2022

concerning her layoff by Harvard.  (Id. at 8, ¶¶ 7, 9; 10, ¶ 16; 11, ¶¶ 20-22)  Plaintiff also alleges

that the Union did not respond to several requests for information that she made between 2021

and 2023.  (Id. at 10-13, ¶¶ 17, 21, 23-28)

On November 4, 2021, Plaintiff filed separate discrimination complaints against

Harvard and the Union with the Equal Employment Opportunity Commission ("EEOC").  (Id. at

3, ¶ 15; 11, ¶ 18)  In her EEOC complaint against Harvard, Plaintiff alleges that between January 2020 and April 2020 Harvard discriminated against her because of her national origin and retaliated against her by suspending and laying her off after she complained to the Union about the alleged discrimination.  (Rauch Decl., Ex. 2 (Nov. 4, 2021 Harvard EEOC Charge) (Dkt. No. 55-2) at 2)  In her EEOC complaint against the Union, Plaintiff alleges that – ever since she made an allegation of discrimination against the Union in July 2019 – the Union has discriminated against her on the basis of her race and national origin; retaliated against her for filing a prior EEOC charge by "denying [her] voting rights, health benefits, and work"; and "allowed the employer to breach the [CBA] by letting them lay off members without an agreement."  (Am. Cmplt., Ex. 46 (Nov. 4, 2021 Union EEOC Charge) (Dkt. No. 46-1) at 69)

      The EEOC issued a right to sue letter as to Harvard on January 13, 2022.  (Jan. 13, 2022 Right to Sue Ltr. re Harvard (Dkt. No. 2) at 18)  The EEOC issued a right to sue letter as to the Union on January 14, 2022.  (Jan. 13, 2022 Right to Sue Ltr. re Union (Dkt. No. 2) at 17)

      On July 14, 2022, the NLRB issued an order consolidating several complaints made by Cruz against Harvard.  (Rauch Decl., Ex. 6 (July 14, 2022 NLRB Order) (Dkt. No. 55-6))  The NLRB held a hearing regarding Cruz's charges on December 16, 2022.  (Am. Cmplt. (Dkt. No. 46) at 1, ¶ 3)[2]

---

[2] On September 8, 2020, Plaintiff filed a separate charge with the NLRB alleging that the Union had unlawfully discontinued her health insurance.  (Am. Cmplt., Ex. 30 (Sept. 8, 2020 NLRB complaint) (Dkt. No. 46-1) at 51)  The NLRB dismissed this charge on December 8, 2020.  (Cameron Decl., Ex. C (Dec. 8, 2020 Ltr.) (Dkt. No. 51-3) at 2)  The letter notifying Plaintiff of the dismissal states:  "The investigation revealed that the decision to discontinue your health benefits was made by the Building Service 32BJ Health Fund ("the Fund"), which is a multiemployer benefit fund and a separate legal entity from that of the Union.  Furthermore, the evidence failed to establish either that the Union exercised control over the Fund or that the Fund acts as an agent of the Union."  (Id.)

In her proposed second amended complaint ("SAC"), Plaintiff makes new allegations regarding her removal from Union headquarters on May 2, 2023 (Proposed SAC (Dkt. No. 71) ¶ 2), and about the Union's handling of complaints raised by other union members. (Id. ¶¶ 1-6, 8)  Plaintiff also alleges that the Union bribed NLRB investigator Matthew Murtagh, who was assigned to investigate one of Plaintiff's complaints.  (Id. ¶ 9 ("I truly believe that the Union bribed Murtagh not to investigate the information I provided him about the illegal layoff since the Union knew from the beginning that I was illegally laid off and hid it from me with the purpose to try to get me fired.")

## II.    PROCEDURAL HISTORY

The Complaint was filed on April 13, 2022.  (Dkt. No. 2)  This Court referred the case to Judge Aaron for general pretrial supervision on April 14, 2022.  (Dkt. No. 7)

Harvard and the Union both moved to dismiss the Complaint on August 11, 2022. (Dkt. Nos. 23, 28)  This Court denied those motions as moot on January 25, 2023, after Plaintiff filed her January 23, 2023 Amended Complaint.  (Dkt. No. 47)

On March 27, 2023, Defendants filed the instant motions to dismiss the Amended Complaint.  (Dkt. Nos. 50, 54)  On March 30, 2023, this Court referred those motions to Judge Aaron for a report and recommendation.  (Dkt. No. 61)

On May 11, 2023, Plaintiff requested leave to file a second amended complaint that would address her May 2, 2023 removal from Union headquarters.  (Pltf. May 11, 2023 Ltr. (Dkt. No. 66)).  On May 17, 2023, Judge Aaron denied Plaintiff's motion for leave to amend without prejudice.  He informed Plaintiff that she could request leave to file a second amended complaint in her opposition to Defendants' motions to dismiss, and that if she made that application, she should attach the proposed second amended complaint to her opposition papers. Judge Aaron further directed that if Plaintiff sought leave to file a second amended complaint,

Defendants should address in their replies whether any further amendment was appropriate. (Dkt. No. 70)

On June 15, 2023, Plaintiff filed her opposition brief and a proposed second amended complaint. (Dkt. Nos. 71-73) Defendants filed reply briefs on August 18, 2023. (Dkt. Nos. 81-82)

In a September 9, 2023 R&R, Judge Aaron recommends that this Court dismiss the Amended Complaint, with leave to amend. (R&R (Dkt. No. 83)) On September 27, 2023, this Court granted all parties until October 16, 2023, to file objections to Judge Aaron's R&R. (Dkt. No. 88)

Plaintiff and Defendant Harvard filed objections to the R&R on October 16, 2023. (Dkt. Nos. 89-90) The Union filed a response to Plaintiff's objections on October 30, 2023. (Dkt. No. 91)

## DISCUSSION

## I.    LEGAL STANDARD

### A.    Review of a Magistrate Judge's Report and Recommendation

In evaluating a magistrate judge's R&R, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), a party may submit objections to the magistrate judge's R&R. Any objections must be "specific" and "written," and must be made "[w]ithin 14 days after being served with a copy of the recommended disposition." Fed. R. Civ. P. 72(b)(2); see also 28 U.S.C. § 636(b)(1).

Where, as here, a party submits timely objections to an R&R, "[the district judge] shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); see also Fed. R. Civ.

P. 72(b)(3). "[O]bjections 'must be specific and clearly aimed at particular findings in the magistrate judge's proposal'" in order to invoke de novo review. See McDonaugh v. Astrue, 672 F. Supp. 2d 542, 547 (S.D.N.Y. 2009) (quoting Molefe v. KLM Royal Dutch Airlines, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009)). "[Where] a 'party makes only conclusory or general objections, or simply reiterates the original arguments,' the court reviews the R&R strictly for clear error." Covington v. Five Points Corr. Facility, No. 11 Civ. 8761 (AT) (FM), 2016 WL 3407845, at *1 (S.D.N.Y. June 16, 2016) (quoting Rivera v. Colvin, No. 11 Civ. 7469, 2014 WL 3732317, at *1 (S.D.N.Y. July 28, 2014)). A decision is "clearly erroneous" when, "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." United States v. Snow, 462 F.3d 55, 72 (2d Cir. 2006) (quotation marks and citation omitted).

The objections of parties proceeding pro se "'are generally accorded leniency,'" Milano v. Astrue, No. 05 Civ. 6527 (KMW) (DCF), 2008 WL 4410131, at *2 (S.D.N.Y. Sept. 26, 2008) (quoting Dixon v. Ragland, No. 03 Civ. 826 (LTS) (KNF), 2007 WL 4116488, at *1 (S.D.N.Y. Nov. 16, 2007)), and "construe[d] . . . to 'raise the strongest arguments that they suggest.'" Id. (quoting Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006)). "[E]ven a pro se party's objections to a[n] [R&R] must be specific and clearly aimed at particular findings in the magistrate's proposal, [however,] such that no party be allowed a second bite at the apple by simply relitigating a prior argument." DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 340 (S.D.N.Y. 2009)

## B.    Rule 12(b)(6) Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"In considering a motion to dismiss[,] . . . the court is to accept as true all facts alleged in the complaint," and must "draw all reasonable inferences in favor of the plaintiff." Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007). A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to establish entitlement to relief]." Iqbal, 556 U.S. at 678.

In resolving a motion to dismiss, a court may "consider . . . the complaint and any documents attached thereto or incorporated by reference and documents upon which the complaint relies heavily." Bldg. Indus. Elec. Contractors Ass'n v. City of N.Y., 678 F.3d 184, 187 (2d Cir. 2012) (citation and quotation marks omitted).

A "pro se complaint . . . [is] interpret[ed] . . . to raise the 'strongest [claims] that [it] suggest[s].'" Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474-75 (2d Cir. 2006) (per curiam)). "However, although pro se filings are read liberally and must be interpreted 'to raise the strongest arguments that they suggest,' a pro se complaint must still 'plead sufficient facts to state a claim to relief that is plausible on its face.'" Wilder v. U.S. Dep't of Veterans Affairs, 175 F. Supp. 3d 82, 87 (S.D.N.Y. 2016) (citations omitted). Moreover, "the court need not accept as true 'conclusions of law or unwarranted deductions of fact,'" Whitfield v. O'Connell, No. 09 Civ. 1925 (WHP), 2010 WL 1010060, at *4 (S.D.N.Y. Mar. 18, 2010) (quoting First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994)), and "'[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice,'" even where a plaintiff is proceeding pro se. Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Iqbal, 556 U.S. at 678).

## II.    REVIEW OF THE REPORT AND RECOMMENDATION

Judge Aaron's R&R recommends that Defendants' motions to dismiss the Amended Complaint be granted, with leave to amend.  (R&R (Dkt. No. 83) at 1, 27)[3]

### A.    Claims against Harvard

The Amended Complaint asserts claims for race and national origin discrimination and retaliation pursuant to Title VII, Section 1981, the NYSHRL, and the NYCHRL against Defendant Harvard.  (Am. Cmplt. (Dkt. No. 46) at 1, 5)  Harvard contends that all of these claims should be dismissed for failure to state a claim.  (Harvard Br. (Dkt. No. 56) at 8)

---

[3]  On October 16, 2023, Plaintiff filed timely objections to the R&R.  (Dkt. No. 90)  In her objections, however, Plaintiff does not identify any particular issue as to which Judge Aaron erred.  Instead, she merely repeats the facts and allegations set forth in the Amended Complaint. (Compare Pltf. Obj. (Dkt. No. 90) at 1-4, with Am. Cmplt. (Dkt. No. 46) at 1-3, 6-8)  Because Plaintiff is "simply relitigating . . . prior argument[s]" raised before Judge Aaron, this Court reviews the R&R only for clear error.  See DiPilato, 662 F. Supp. 2d at 339.

Plaintiff also asserts new facts that are not alleged in the Amended Complaint.  (See, e.g., Pltf. Obj. (Dkt. No. 90) at 2 ("Perdoda came in new from another building in January 1, 2020 to 300 Madison Avenue and only had at that time 11 years in the industry and no seniority in the building instead I had 16 years in the building and 16 years in the industry. . . .")  Factual allegations not pled in a complaint cannot defeat a motion to dismiss.  See Chartwell Therapeutics Licensing, LLC v. Citron Pharma LLC, 16-CV-3181 (RPK) (CLP), 2020 WL 7042642, at *9-10 (E.D.N.Y. Nov. 30, 2020) (disregarding new factual allegations in plaintiff's opposition brief).  Accordingly, this Court will not address factual allegations not pled in the Amended Complaint.

1.    **Timeliness of Title VII Claim**

Harvard argues that Plaintiff's Title VII claims are time-barred, because Plaintiff

did not file a complaint with the EEOC until November 4, 2021, and the last alleged unlawful

conduct cited by Plaintiff took place in April 2020.  (Harvard Br. (Dkt. No. 56) at 16-17)  Judge

Aaron agrees, and recommends that Plaintiff's Title VII claims be dismissed as time-barred.

(R&R (Dkt. No. 83) at 10-11).

a.    **Applicable Law**

Title VII requires that individuals alleging discrimination in violation of that

statute file a charge of discrimination within 300 days "'after the alleged unlawful employment

practice occurred.'"  Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 78-79 (2d Cir.

2015) (quoting 42 U.S.C. § 2000e–5(e)(1)).  Discrete discriminatory acts, such as a termination

of employment or a failure to promote, "'are not actionable if time barred.'"  Id. at 79 (quoting

Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002)).  Where a plaintiff alleges a

discrete act of employment discrimination, "each act triggers the running of the limitations

period."  Williams v. New York City Dep't of Educ., No. 17-CV-1996 (AJN), 2018 WL

4735713, at *5 (S.D.N.Y. Sept. 29, 2018).  By contrast, where a plaintiff alleges a continuing

violation or ongoing practice such as a hostile work environment, he or she "need only show that

part of the violation took place within the limitations period."  Id. at *6 (citation and quotation

marks omitted).

With respect to the 300-day filing window, "the burden of pleading and proving

Title VII exhaustion lies with defendants and operates as an affirmative defense."  Hardaway v.

Hartford Pub. Works Dep't, 879 F.3d 486, 491 (2d Cir. 2018); see also Kane v. St. Raymond's

Roman Catholic Church, No. 14-CV-7028 (AJN), 2015 WL 4270757, at *5 (July 13, 2015

S.D.N.Y.) (noting that "a court will not usually dismiss a claim for failure to timely file an

EEOC charge unless such failure is apparent from the face of the complaint").

<b>b.    <u>Analysis</u></b>

In concluding that Plaintiff's Title VII claim against Harvard is time barred (<u>see</u>

R&R (Dtk. No. 83) at 10), Judge Aaron reasons as follows:

> Plaintiff filed the . . . Charge [against Harvard] with the EEOC on November 4,
> 2021.  (<u>See</u> Rauch Decl., Exh. 2.)  Since a charge under Title VII must be filed
> within 300 days after any alleged unlawful employment practice occurred, <u>see</u>
> <u>Baroor</u>, 362 F. App'x at 159, claims of discrimination by Harvard that accrued
> prior to January 8, 2021 are time-barred under Title VII.  The latest
> discriminatory conduct allegedly committed by Harvard against Plaintiff occurred
> in April 2020, when she received a letter informing her that she was laid off.
> (Am. Compl. at PDF p. 3, ¶ 12.)

(<u>Id.</u> at 10-11)  Judge Aaron also concludes that the Amended Complaint does not plausibly allege

any facts suggesting a "continuous practice or policy of discrimination" by Harvard that would

extend the limitations period.  (<u>Id.</u> at 11)

This Court finds no error in Judge Aaron's analysis.[4]  Accordingly, Plaintiff's

Title VII claim against Harvard will be dismissed as time-barred.

---

[4]  In concluding that Plaintiff's Title VII claim against Harvard is time-barred, Judge Aaron
relies in part on Plaintiff's EEOC complaint.  (<u>See</u> R&R (Dkt. No. 83) at 10) (citing Rauch Decl.,
Ex. 2 (Nov. 4, 2021 Harvard EEOC Charge) (Dkt. No. 55-2))  Given that the Amended
Complaint pleads that "[o]n November 4, 2022 [Plaintiff] filed a discrimination complaint with
EEOC against Harvard" (Am. Cmplt. (Dkt. No. 46) at 3, ¶ 15), Plaintiff's EEOC complaint
against Harvard is incorporated by reference into the Amended Complaint.  And while the
Amended Complaint asserts that Plaintiff's EEOC complaint against Harvard was filed on
November 4, 2022 – rather than November 4, 2021, as stated in the EEOC complaint – there is
no reason to believe that the date specified in the EEOC complaint is inaccurate.  Accordingly,
the factual basis for Harvard's timeliness defense is "apparent from the face of the complaint."
<u>Kane</u>, 2015 WL 4270757, at *5.

### 2.    Merits of Discrimination Claims

Harvard contends that the Amended Complaint does not state a claim for race or national origin discrimination under Title VII, Section 1981, the NYSHRL, or the NYCHRL. (Harvard Br. (Dkt. No. 56) at 19-26)  Judge Aaron recommends that Plaintiff's Title VII and Section 1981 discrimination claims be dismissed for failure to state a claim, but declines to make a recommendation with respect to Plaintiff's NYSHRL and NYCHRL discrimination claims. (R&R (Dkt. No. 83) at 11-17)

### a.    Applicable Law

To state a <u>prima facie</u> case of discrimination under Title VII, Plaintiff must plead facts showing "'(1) that [s]he belonged to a protected class; (2) that [s]he was qualified for the position [s]he held; (3) that [s]he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.'"  <u>Sassaman v. Gamache</u>, 566 F.3d 307, 312 (2d Cir. 2009) (quoting <u>Holcomb v. Iona Coll.</u>, 521 F.3d 130, 138 (2d Cir. 2008)).  To survive a motion to dismiss, Plaintiff must plausibly allege that her race or national origin "was a motivating factor in the employment decision."  <u>Vega</u>, 801 F.3d at 86.  Plaintiff's factual allegations "need only give plausible support to a minimal inference of discriminatory motivation."  <u>Littlejohn v. City of New York</u>, 795 F.3d 297, 311 (2d Cir. 2015).  Discrimination claims under Title VII and Section 1981 are analyzed under the same standard.  <u>Brown v. City of Syracuse</u>, 673 F.3d 141, 150 (2d Cir. 2012).

As to the NYSHRL, courts in the past "treat[ed] Title VII and NY[S]HRL discrimination claims as analytically identical, applying the same standard of proof to both claims."  <u>Salamon v. Our Lady of Victory Hosp.</u>, 514 F.3d 217, 226 n.9 (2d Cir. 2008).  In August 2019, however, the NYSHRL was amended to provide that it "shall be construed

liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of [the NYSHRL], have been so construed." N.Y. Exec. Law § 300. Accordingly, where – as here – a plaintiff's claims accrued after this amendment went into effect in October 2019, "'the standard for [NYSHRL discrimination] claims [is] closer to the standard of the NYCHRL'" set forth below. Edelman v. NYU Langone Health Sys., No. 21 Civ. 502 (LGS), 2022 WL 4537972, at *14 (S.D.N.Y. Sept. 28, 2022) (second alteration in original) (quoting Livingston v. City of New York, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021).

"NYCHRL claims are to be reviewed more liberally than Title VII claims, and the provisions of the NYCHRL must be construed broadly in favor of plaintiffs alleging discrimination." Levy v. Legal Aid Soc'y, 408 F. Supp. 3d 209, 217 (E.D.N.Y. 2019) (citation and quotation marks omitted). Accordingly, "courts must analyze NYCHRL claims separately and independently from any federal . . . claims." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013).

"[W]here an adverse employment action is shown to be 'motivated by racial or ethnic animus, even in part, the defendant may be held liable' under the NYCHRL." Williams v. New York City Transit Auth., 171 A.D.3d 990, 992 (2d Dep't 2019) (quoting Singh v. Covenant Aviation Sec., LLC, 131 A.D.3d 1158, 1161 (2d Dep't 2015)).

      **b.**      **Analysis**

Judge Aaron concludes that the Amended Complaint does not plausibly allege a race or national origin discrimination claim against Harvard under Title VII or Section 1981. (R&R (Dkt. No. 83) at 11) He reasons as follows:

> First, to the extent that Plaintiff purports to assert a failure to promote claim (see Am. Compl. at PDF p. 1, ¶ 3 (referring to "newly opened positions including the Forelady position which [she] was entitled to get based on seniority and

qualifications according to the CBA")), she cannot do so since she does not allege that she applied for a Forelady position. See Quarles v. New York City Health & Hosps., No. 22-CV-04553 (PGG) (GWG), 2023 WL 3880015, at *9 (S.D.N.Y. June 8, 2023) ("Courts 'require a plaintiff to allege that she or he applied for a specific position or positions and was rejected therefrom, rather than merely asserting that on several occasions she or he generally requested promotion.'" (quoting Brown v. Coach Stores, Inc., 163 F.3d 706, 710 (2d Cir. 1998)). Rather, Plaintiff alleges that Harvard never posted these positions for her to apply. (See Am. Comp. at PDF p. 1, ¶ 3.) Thus, the Court considers these allegations as part of Plaintiff's claim for breach of the CBA against Harvard. (See Discussion Section III, infra.) In any event, no inference of discriminatory motivation can be drawn from the fact that someone of Albanian descent (i.e., Perdoda) was hired to the Forelady position, since Plaintiff has failed to plead facts to establish that she and Perdoda were similarly situated with respect to relevant experience and/or length of employment. See McGuinness v. Lincoln Hall, 263 F.3d 49, 54 (2d Cir. 2001) ("[W]here a plaintiff seeks to establish the minimal prima facie case by making reference to the disparate treatment of other employees, those employees must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination.").

Second, Plaintiff makes allegations regarding an increased workload. "[A]n employer discriminates against a plaintiff by taking an adverse employment action against [her]." Vega, 801 F.3d at 85. "[T]he assignment of 'a disproportionately heavy workload' can constitute an adverse employment action." Id. (quoting Feingold v. New York, 366 F.3d 138, 152-53 (2d Cir. 2004)). Here, however, Plaintiff has not plausibly alleged that she was assigned an increased workload due to her national origin. Rather, she alleges that the workload of other employees was increased as well. (See Am. Compl. at PDF p. 1, ¶ 1 (Harvard "increased our already excessive workload by adding to clean the refrigerators on each floor." (emphasis supplied); see also Am. Compl., Exh. 7 ("Members claim that Employer is refusing to pay AB Time for extra services in cleaning fridges & microwaves within their routines.").)

Third, Plaintiff alleges that Perdoda made threats of discipline. Plaintiff alleges that, when she told Perdoda that she was going to complain about the employees' increased workload in cleaning the refrigerators, Perdoda "told [her] to be careful that it could get [her] a warning or suspension." (Am. Compl. at PDF p. 1, ¶ 1.) However, "[t]he mere threat of disciplinary action, including the threat of termination, does not constitute an adverse action materially altering the conditions of employment." Thomas v. Bergdorf Goodman, Inc., No. 03-CV-03066 (SAS), 2004 WL 2979960, at *10 (S.D.N.Y. Dec. 22, 2004).

Fourth, Plaintiff makes allegations of disparate treatment, asserting that "[f]rom the beginning Harvard has discriminated against Hispanics" (Am. Compl. at PDF p. 3, ¶ 16), that "Harvard gives Albanian workers more favorable treatment than Hispanic workers" and that those workers "get more overtime and better

positions." (<u>Id.</u> at PDF p. 5, ¶ 24.)  However, "[a] plaintiff relying on disparate treatment evidence must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself."  <u>Mandell v. Cty. of Suffolk</u>, 316 F.3d 368, 379 (2d Cir. 2003) (internal quotation marks omitted).  Plaintiff's Amended Complaint does not allege that she and the Albanian co-workers to whom she refers were similarly situated in all material respects, and as such, she does not state a Title VII claim based upon disparate treatment.  <u>See</u> <u>Benzinger v. Lukoil Pan Americas, LLC</u>, 447 F. Supp. 3d 99, 122 (S.D.N.Y. 2020) ("[Plaintiff]'s failure to set out [the comparators'] qualifications (or any other relevant information) prevents a finding that her supposed comparators were similarly situated in any, much less all material respects, and thereby precludes even a minimal inference that the difference of treatment may be attributable to discrimination.").

Finally, Plaintiff makes allegations regarding her layoff.  However, the Amended Complaint does not plausibly allege that she was laid off based upon her national origin.  The Amended Complaint alleges that Plaintiff was sent home on March 19, 2020, and that the next day Harvard sent home "most" of Plaintiff's co-workers, and also alleges that Harvard laid off hundreds of employees during the pandemic.  (Am. Compl. at PDF p. 2, ¶ 10; PDF p. 5, ¶ 25.)  Thus, Plaintiff has failed to plausibly allege that she was laid off due to Harvard's discriminatory animus.

(<u>Id.</u> at 11-14) (footnote omitted)

This Court finds no error in Judge Aaron's determination that Plaintiff has failed to plausibly allege a race or national origin discrimination claim under Title VII or Section 1981.  Accordingly, Harvard's motion to dismiss those claims will be granted.

Because Judge Aaron recommends that all of Plaintiff's federal claims be dismissed with leave to amend, he does not make any recommendation with respect to Plaintiff's discrimination claims under the NYSHRL and the NYCHRL.  (R&R (Dkt. No. 83) at 16-17)  However, because this Court – as explained below – will deny Harvard's motion to dismiss Plaintiff's retaliation claims under Section 1981, the NYSHRL, and the NYCHRL, not all of Plaintiff's federal claims will be dismissed.  Accordingly, this Court will address Harvard's argument that Plaintiff has failed to state a claim for race or national origin discrimination under the NSYHRL and the NYCHRL.

As discussed above, Plaintiff's NYSHRL and NYCHRL claims must be analyzed "separately and independently" from Plaintiff's federal discrimination claims.  See Mihalik, 715 F.3d at 109; Edelman, 2022 WL 4537972, at *14 (analyzing NYSHRL and NYCHRL discrimination claims together).  Even under the more liberal standards applicable under these statutes, however, the Amended Complaint's factual allegations are insufficient to plausibly allege that Harvard's actions were motivated – even in part – by discriminatory animus.

As an initial matter, the Amended Complaint does not plead facts constituting direct evidence of discriminatory intent, such as invidious comments by Harvard managers that would suggest a discriminatory motive.  As to circumstantial evidence, the Amended Complaint alleges that Harvard increased the workload of all employees in the Building (Am. Cmplt. (Dkt. No. 46) at 1, ¶ 1), and that Harvard laid off "hundreds" of employees as a result of the COVID-19 pandemic.  (Id. at 5, ¶ 25)  Nothing in these allegations suggests that Plaintiff was singled out for harsher treatment.

At best, the Amended Complaint asserts (1) Plaintiff's subjective belief that Harvard's alleged adverse actions against her were motivated by her race or national origin (Am. Cmplt. (Dkt. No. 46) at 3, ¶ 16); and (2) that in several instances, Harvard gave white and Albanian employees preferential treatment over Hispanic employees in the form of promotions, assignment of work, more lenient discipline, and more sympathetic treatment of complaints.  (Id. at 1-5, ¶¶ 1, 4-5, 8, 16-24)  But Plaintiff's "subjective belief that her [increased work assignment and later layoff were] motivated by her race [or national origin] is legally irrelevant" to pleading discriminatory intent.  Farmer v. Shake Shack Enterprises, LLC, 473 F. Supp. 3d 309, 328 (S.D.N.Y. 2020).  And as Judge Aaron points out, the Amended Complaint's allegations regarding preferential treatment of white and Albanian employees lack sufficient detail to

demonstrate that Plaintiff was similarly situated to those employees.  (R&R (Dkt. No. 83) at 12-13)

For example, the Amended Complaint alleges no facts suggesting that Plaintiff and Juliana Perdoda – the Albanian woman whom Harvard promoted to the Forelady position – were similarly situated.  Nor does the Amended Complaint allege that Plaintiff was similarly situated with, inter alia, Grazyna Frenkyl, a white Polish co-worker who complained to Harvard when her supervisor "hit[] [Frenkyl] in the arm"; with Peter Rak, a white co-worker whom Harvard promoted to another vacant Forelady position; or with Kaja Albijond, an Albanian co-worker whom Harvard did not suspend after Albijond "got into a fight" with a Hispanic employee, whom Harvard did suspend.   (Am. Cmplt. (Dkt. No. 46) at 1-3, ¶¶ 1, 5, 16)  And many of the comparator incidents alleged in the Amended Complaint – which took place in 2011, 2019, 2021, 2022, and 2023 – are separated by months or years from the period between January 2020 and March 2020 cited by Plaintiff.  (Id. at 3-4, ¶¶ 17-23)  Moreover, a number of the alleged comparator incidents involve circumstances that differ significantly from those cited by Plaintiff, such as Harvard's decision to suspend only a Hispanic employee who "got into a fight" with an Albanian employee (id. at 3, ¶ 16), and Harvard's unsympathetic treatment of a Hispanic employee who "couldn't travel" back to New York from a "vacation in Mexico with his family" when "his mom got sick."  (Id. at 3, ¶ 17)

Even viewed in the light most favorable to Plaintiff, the Amended Complaint's allegations are not sufficient to make out a minimal showing that Harvard's actions were "motivated by racial or ethnic animus, even in part" under the NYSHRL and the NYCHRL. Williams, 171 A.D.3d at 992 (citation and quotation marks omitted).

Accordingly, Harvard's motion to dismiss Plaintiff's race and national origin discrimination claims under the NYSHRL and the NYCHRL will be granted.

### 3. Retaliation Claims

#### a. Applicable Law

To make out a prima facie case of retaliation under Title VII, Section 1981, the NYSHRL, and the NYCHRL, a plaintiff must allege facts that show "'(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" Littlejohn, 795 F.3d at 316 (quoting Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010)) (addressing standard for retaliation claims under Title VII and Section 1981); United States v. N.Y.C. Dep't of Educ., 407 F. Supp. 3d 365, 402 & n.17 (S.D.N.Y. 2018) (applying same analysis to retaliation claims under the NYCHRL, but explaining that "the plaintiff's burden is generally reduced under the NYCHRL" with respect to what constitutes an adverse employment action).

"Protected activity," for purposes of a retaliation claim, is "action taken to protest or oppose statutorily prohibited discrimination." Natofsky v. City of New York, 921 F.3d 337, 354 (2d Cir. 2019) (quotation marks and citation omitted). "Complaining about general unfairness, unaccompanied by any indication that plaintiff's protected class status caused the unfairness, does not qualify as protected activity." Batiste v. City Univ. of New York, No. 16-CV-3358(VEC), 2017 WL 2912525, at *10 (S.D.N.Y. July 7, 2017) (citing Rojas v. Roman Cath. Diocese of Rochester, 660 F.3d 98, 107-08 (2d Cir. 2011) Forms of "protected activity" under Title VII may include "[formal] as well informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of

co-workers who have filed formal charges." Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990). "[U]nder the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination." Mihalik, 715 F.3d at 112.

In the context of a retaliation claim brought under federal law, an "adverse employment action" is "any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination." Vega, 801 F.3d at 90 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006)). The adverse action at issue "need not affect the terms and conditions of a plaintiff's employment." Fincher v. Depository Tr. & Clearing Corp., 604 F.3d 712, 720 n.6 (2d Cir. 2010). Similarly, under the NYCHRL, an "adverse employment action" includes any act that is "reasonably likely to deter a person from engaging in protected activity." N.Y.C. Admin. Code § 8-107(7).

As to causation, that can be proven either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Gordon v. New York City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000). "When considering causation, courts apply the same temporal-proximity analysis to NYCHRL and NYSHRL retaliation claims as they do to Title VII claims." Kraiem v. JonesTrading Institutional Servs. LLC, 571 F. Supp. 3d 53, 60 (S.D.N.Y. 2021).

"[T]he allegations in the complaint need only give plausible support to the reduced prima facie requirements that arise under McDonnell Douglas in the initial phase of a Title VII litigation." Littlejohn, 795 F.3d at 316.

b.    <u>Analysis</u>

Judge Aaron concludes that the Amended Complaint does not allege a retaliation

claim against Harvard under Title VII and Section 1981.  (R&R (Dkt. No. 83) at 14-16)  He

reasons as follows:

> Construing the Amended Complaint in the light most favorable to Plaintiff, she
> appears to allege that she engaged in protected activity when she complained to
> Perdoda regarding an increased workload on January 1, 2020 (Am. Compl. at
> PDF p. 1, ¶ 1), complained to Local 32BJ and the NLRB regarding conduct she
> perceived to violate the CBA and/or the National Labor Relations Act ("NLRA")
> (id. at PDF p. 1, ¶¶ 2-4, 6), and sought to raise generalized complaints with
> human resources on February 10, 2020 that Perdoda and Alajbegu "were
> discriminating against and harassing" Plaintiff. (Id. at PDF pp. 1-2, ¶ 5.)
> Plaintiff's allegations regarding complaints she made to Perdoda, Local 32BJ and
> the NLRB concerning increased workloads, her lack of promotion to the Forelady
> position and unfair distribution of overtime fail to support that she "engage[d] in
> any protected activity related to national origin discrimination that was known to
> her employer." <u>Benzinger</u>, 447 F. Supp. 3d at 126.  Rather, these allegations
> reflect that Plaintiff complained that Harvard was violating the terms of the CBA
> and/or the NLRA, not that Harvard was violating anti-discrimination laws.
>
> Plaintiff's allegations that she "went to Harvard to complain about the two
> Albanian Foreladies," <u>i.e.</u>, Alajbegu and Perdoda, who "were discriminating
> against and harassing" her; that she "spoke with Maggie Calabrase from human
> resources [to] express[] [her] concerns;" that "Calabrase refused to take [her]
> complaint;" and that Calabrese "told [her] to go to the Union" (Am. Compl. at
> PDF pp. 1-2, ¶ 5) do not support a retaliation claim, since she does not allege any
> adverse action that was taken after she made her complaint.  Harvard's purported
> failure to act on Plaintiff's complaint does not reflect retaliation.  <u>See Fincher v.</u>
> <u>Depository Tr. & Clearing Corp.</u>, 604 F.3d 712, 721 (2d Cir. 2010) ("An
> employee whose complaint is not investigated cannot be said to have thereby
> suffered a punishment for bringing that same complaint:  Her situation in the
> wake of her having made the complaint is the same as it would have been had she
> not brought the complaint or had the complaint been investigated but denied for
> good reason or for none at all.").

(<u>Id.</u> at 14-16)

Judge Aaron does not, however, analyze all of the protected activity alleged in the

Amended Complaint.  For example, in concluding that Plaintiff only "complained that Harvard

was violating the terms of the CBA and/or the NLRA, not that Harvard was violating anti-

discrimination laws" (id. at 15), Judge Aaron does not address the fact that (1) Plaintiff had filed a complaint with the Union on February 21, 2020, alleging that Harvard "discriminated against [Plaintiff] on the basis of [her] race" (Am. Cmplt., Ex. 11 (Feb. 21, 2020 Local 32BJ complaint) (Dkt. No. 46-1) at 14); and (2) that the Union sent a March 10, 2020 letter to Murat Mela, Harvard's vice president, notifying him that Plaintiff had "claim[ed] that [she is] being discriminated against on the basis of [her] race." (Id., Ex. 13 (Mar. 10, 2020 Ltr.) (Dkt. No. 46-1) at 16)

On March 19, 2020 – nine days after the Union sent its letter to Harvard reporting Cruz's discrimination allegations – Plaintiff was "asked . . . to go home" after a meeting with Mela and a confrontation with Alajbegu. (Am. Cmplt. (Dkt. No. 46) at 2, ¶ 10) In a subsequent complaint Plaintiff filed with the Union, she contends that the instruction to "go home" was a "suspen[sion]" of "indefinite[]" length. (Am. Cmplt., Ex. 15 (Apr. 1, 2020 Local 32BJ complaint) (Dkt. No. 46-1) at 19) The Union conducted an investigation of Plaintiff's complaint, and confirmed that Plaintiff "was suspended from the building on March 19[,] 2020," noting that Mela had told the Union that Plaintiff "was removed" after "she became disruptive" and that Harvard "will not be bringing her back." (Am. Cmplt., Ex. 16 (Apr. 1, 2020 Local 32BJ interview notes) (Dkt. No. 46-1) at 20)

This Court concludes that the Amended Complaint plausibly alleges that (1) Cruz engaged in protected activity when she complained to the Union on February 21, 2020 about alleged race discrimination by Harvard; (2) on March 10, 2020, the Union notified Harvard of Cruz's complaint of race discrimination; (3) that Harvard suspended Cruz's employment on March 19, 2020; and (4) that Harvard's suspension of Cruz's employment occurred only nine

days after it had been informed of her complaint of race discrimination.[5]  A temporal gap of only

nine days between notice to an employer of protected activity and an alleged adverse action is

adequate to plausibly allege the required causal connection.  See Littlejohn, 795 F.3d at 319-20

("[Plaintiff's] allegations that the demotion occurred within days after her complaints of

discrimination are sufficient to plausibly support an indirect inference of causation."); Reed v.

A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996) (twelve days between complaints

about sexual harassment and discharge could suggest a causal relationship); Quinn v. Green Tree

Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998) (proof of discharge less than two months after

plaintiff filed a sexual harassment complaint with management, and ten days after she filed a

complaint with the state human rights division, constituted prima facie evidence of a causal

connection between protected activity and retaliation).

   The Amended Complaint's allegations are therefore sufficient to make out a

prima facie case of retaliation under Title VII, Section 1981, the NYSHRL, and the NYCHRL.[6]

---

[5]  While Cruz directed her complaint of race discrimination to the Union rather than directly to
Harvard, "'[f]iling a union grievance regarding discriminatory treatment is a protected activity
[under Title VII and comparable state and city statutes].'"  Small v. City of New York, No. 1:21-
CV-1527-GHW, 2022 WL 376030, at *9 (S.D.N.Y. Feb. 7, 2022 (quoting Washington v. Garage
Mgmt. Corp., No. 11 CIV. 3420 CM, 2012 WL 4336163, at *17 (S.D.N.Y. Sept. 20, 2012); see
Williams v. Skyline Auto. Inc., No. 11 CIV. 8318 KBF, 2012 WL 1965334, at *4 (S.D.N.Y.
May 24, 2012) ("fil[ing] a grievance with [the plaintiff's] union" is "protected activity" under the
NYSHRL and NYCHRL).

Accordingly, in failing to consider whether Cruz's complaint of race discrimination to her union
constituted protected activity, Judge Aaron committed clear error.

[6]  Because "the protections afforded by the NYSHRL and the NYCHRL are at least as protective
as those guaranteed by the federal antidiscrimination laws, a plaintiff who pleads a prima facie
case of race-based retaliation under Section 1981 necessarily does so under the state and city
laws as well."  Baptiste v. City Univ. of New York, 680 F. Supp. 3d 415, 426 (S.D.N.Y. 2023).

Moreover, Plaintiff's retaliation claims under Section 1981, the NYSHRL, and NYCHRL are timely.[7]  Accordingly, Harvard's motion to dismiss Plaintiff's retaliation claims under Section 1981, the NYSHRL, and the NYCHRL will be denied.

### 4.    Whether Plaintiff's NYSHRL and NYCHRL Retaliation Claims are Preempted

Harvard argues that Plaintiff's NYSHRL and NYCHRL retaliation claims are preempted by Section 301 of the Labor Management Relations Act, in that they turn on interpretation of the collective bargaining agreement between the Union and Harvard.  (Harvard Br. (Dkt. No. 56) at 30-31)  Judge Aaron does not address preemption, because he concludes that Harvard is entitled to dismissal on other grounds.  (R&R (Dkt. No. 83) at 17 n.9)

Having concluded that the Amended Complaint states a retaliation claim under the NYSHRL and NYCHRL, this Court must address Harvard's argument that those claims are preempted by the LMRA.

### a.    Applicable Law

Section 301 of the LMRA "governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'"  Caterpillar Inc. v. Williams, 482 U.S. 386, 394 (1987) (quoting Electrical Workers v. Hechler, 481 U.S. 851, 859 n.3 (1987)).  Accordingly, "when resolution of a state law claim is 'substantially dependent' upon or 'inextricably intertwined' with analysis of the terms of a CBA, the state law claim 'must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law.'"  Whitehurst v. 1199 SEIU United

---

[7]  Plaintiff's retaliation claim under Title VII is time-barred for the same reasons that her discrimination claim under Title VII is time-barred.  Harvard does not argue that Plaintiff's retaliation claims under Section 1981, the NYSHRL, or the NYCHRL are time-barred.

Healthcare Workers E., 928 F.3d 201, 206 (2d Cir. 2019) (quoting Allis-Chalmers Corp. v.

Lueck, 471 U.S. 202, 213, 220 (1985).

> However, where

> > a plaintiff covered by a CBA asserts "legal rights independent of that agreement,"
> > preemption does not occur. Caterpillar Inc., 482 U.S. at 396, 107 S.Ct. 2425. A
> > state-law claim is "independent" when resolving it "does not require construing
> > the collective-bargaining agreement." [Lingle v. Norge Div. of Magic Chef, Inc.,
> > 486 U.S. 399, 407 (1988)]. This rule ensures that § 301 is not "read broadly to
> > pre-empt nonnegotiable rights conferred on individual employees as a matter of
> > state law." Livadas v. Bradshaw, 512 U.S. 107, 123, 114 S.Ct. 2068, 129 L.Ed.2d
> > 93 (1994); see also Foy v. Pratt & Whitney Grp., 127 F.3d 229, 232, 235 (2d Cir.
> > 1997) (state law negligent misrepresentation claims not preempted by § 301
> > because they rested on independent state law rights that did not require
> > interpretation of CBA and "[s]tate law – not the CBA – [was] the source of the
> > rights asserted by the plaintiffs"). That a court may need to consult the CBA in
> > resolving the state law claim – to compute damages, for instance – does not
> > subject that claim to preemption by § 301. Livadas, 512 U.S. at 125, 114 S.Ct.
> > 2068; accord Wynn v. AC Rochester, 273 F.3d 153, 158 (2d Cir. 2001) (per
> > curiam) ("simple reference to the face of the CBA" does not require preemption).
> > "The boundary between claims requiring 'interpretation' of a CBA and ones that
> > merely require such an agreement to be 'consulted' is elusive." Wynn, 273 F.3d
> > at 158.

Id. at 207.

#### b.    **Analysis**

As discussed above, Plaintiff's surviving retaliation claim against Harvard is

premised on the following facts:  (1) on February 21, 2020, she complained to the Union that

Harvard was discriminating against her on the basis of her race (Am. Cmplt., Ex. 11 (Feb. 21,

2020 Local 32BJ complaint) (Dkt. No. 46-1) at 14); (2) in a March 10, 2020 letter, the Union

informed Harvard that Plaintiff had complained that Harvard was discriminating against her on

the basis of her race (id., Ex. 13 (Mar. 10, 2020 Ltr.) (Dkt. No. 46-1) at 16); (3) on March 19,

2020 – nine days later – Harvard suspended Plaintiff.  (Am. Cmplt. (Dkt. No. 46) at 2, ¶ 10)

These facts do not implicate, or require analysis of, the terms of the CBA.  Indeed, Plaintiff is

asserting "legal rights independent [of the CBA]," and the resolution of her retaliation claims is

not "substantially dependent" on the CBA's terms. Whitehurst, 928 F.3d at 206-207 (citation and quotation marks omitted). Therefore, Plaintiff's retaliation claims under the NYSHRL and NYCHRL are not preempted by Section 301 of the LMRA, and Harvard's motion to dismiss these claims on that basis will be denied.

**B.    Claims Against the Union**

The Amended Complaint asserts claims against the Union under Title VII, Section 1981, the NYSHRL, and the NYCHRL. (Am. Cmplt. (Dkt. No. 46) at 6, 13) Judge Aaron also construes the Amended Complaint as asserting a duty of fair representation claim against the Union, as well as a claim that the Union violated the Labor-Management Reporting and Disclosure Act. (R&R (Dkt. No. 83) at 17)

The Union contends that Plaintiff has failed to state a claim under any of these provisions. (Local 32BJ Br. (Dkt. No. 52) at 9)

**1.    Duty of Fair Representation Claim**

Judge Aaron recommends dismissing Plaintiff's duty of fair representation claim because many of her allegations are time-barred, and because Plaintiff has otherwise failed to state a claim. (R&R (Dkt. No. 83) at 28)

**a.    Applicable Law**

**i.    Statute of Limitations**

Claims for a breach of the duty of fair representation are subject to a six-month statute of limitations. Buttry v. Gen. Signal Corp., 68 F.3d 1488, 1492 (2d Cir. 1995). "The six-month limitations period 'begins to run when a plaintiff knows or reasonably should know that the union has breached its duty of fair representation.'" Id. (quoting Flanigan v. International Bhd. of Teamsters, Truck Drivers Local 671, 942 F.2d 824, 827 (2d Cir. 1991)). Moreover, "[i]t is beyond dispute" that a plaintiff's fair representation claim accrues, "at the latest by . . . the date

of [the plaintiff's] NLRB charge." Kavowras v. New York Times Co., 328 F.3d 50, 55 (2d Cir. 2003). And "[o]nce a plaintiff learns of his union's breach of its duty of fair representation, the union's subsequent failure to actually represent the plaintiff 'cannot be treated as a continuing violation that preclude[s] the running of the limitations period.'" Buttry, 68 F.3d at 1492 (quoting Flanigan, 942 F.2d at 827).

"A statute of limitations affirmative defense normally cannot be decided on a motion to dismiss." Essex Cap. Corp. v. Garipalli, No. 17-CV-06347 (JFK), 2018 WL 6618388, at *2 (S.D.N.Y. Dec. 18, 2018). However, "[w]here the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss." Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989).

### ii.     Elements of a Fair Representation Claim

"The duty of fair representation is a 'statutory obligation' under the NLRA, requiring a union 'to serve the interests of all members without hostility or discrimination . . . , to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" Fowlkes v. Ironworkers Loc. 40, 790 F.3d 378, 387 (2d Cir. 2015) (quoting Vaca v. Sipes, 386 U.S. 171, 177)). "'[A] union breaches the duty of fair representation when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith.'" Sanozky v. Int'l Ass'n of Machinists & Aerospace Workers, 415 F.3d 279, 282 (2d Cir. 2005) (quoting Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 44 (1998). Plaintiff must also "'demonstrate a causal connection between the union's wrongful conduct and their injuries.'" Vaughn v. Air Line Pilots Ass'n, Int'l, 604 F.3d 703, 709 (2d Cir. 2010) (quoting Spellacy v. Airline Pilots Ass'n-Int'l, 156 F.3d 120, 126 (2d Cir. 1998)). "Any substantive examination of a union's performance . . . must be highly deferential, recognizing the wide latitude that negotiators need for the effective

performance of their bargaining responsibilities." <u>Air Line Pilots Ass'n, Int'l v. O'Neill</u>, 499

U.S. 65, 78 (1991).

"'[A] union's actions are arbitrary only if, in light of the factual and legal

landscape at the time of the union's actions, the union's behavior is so far outside a wide range

of reasonableness as to be irrational.'" <u>Sanozky</u>, 415 F.3d at 282 (quoting <u>O'Neill</u>, 499 U.S. at

67).  Moreover, "[t]actical errors are insufficient to show a breach of the duty of fair

representation; even negligence on the union's part does not give rise to a breach." <u>Barr v.</u>

<u>United Parcel Serv., Inc.</u>, 868 F.2d 36, 43 (2d Cir. 1989).  "A union's acts are discriminatory

when 'substantial evidence' indicates that it engaged in discrimination that was 'intentional,

severe, and unrelated to legitimate union objectives.'" <u>Vaughn</u>, 604 F.3d at 709 (quoting

<u>Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees of Am. v. Lockridge</u>, 403 U.S.

274, 301 (1971)).  "Bad faith, which 'encompasses fraud, dishonesty, and other intentionally

misleading conduct' requires proof that the union acted with 'an improper intent, purpose, or

motive.' <u>Id.</u> at 709-10 (quoting <u>Spellacy</u>, 156 F.3d at 126).

                    **b.    <u>Analysis</u>**

          Judge Aaron concludes that many of the allegations in the Amended Complaint

that present a potential basis for a fair representation claim are time-barred.  He reasons as

follows:

> This action was filed on April 13, 2022.  (<u>See</u> Compl.)  Thus, any [duty of fair
> representation] claims that arose prior to October 13, 2021 (including Plaintiff's
> claims regarding the failure in 2020 to post the Forelady position, her claims
> regarding events in February and March 2020 and her claims regarding her health
> insurance (<u>see</u> Pl.'s 6/15/23 32BJ Opp. at 4-5)) should be dismissed as time
> barred.

(R&R (Dkt. No. 83) at 20) (footnote omitted)

This Court finds no error in Judge Aaron's analysis. Plaintiff filed numerous complaints with the NLRB throughout 2020 and 2021 in which she alleges, inter alia, that the Union "threaten[ed] that [Harvard] would retaliate against [employees] with respect to the employment if they complained about company practices or engaged in any other union or protected activity" (Am. Cmplt., Ex. 9 (Jan. 31, 2020 NLRB complaint) (Dkt. No. 46-1) at 12); that the Union "refus[ed] to process the grievance of [Plaintiff] regarding [Harvard's] failure to rotate overtime fairly and by seniority for arbitrary or discriminatory reasons or in bad faith" (id., Ex. 12 (Feb. 25, 2020 NLRB complaint) (Dkt. No. 46-1) at 15); and regarding her suspension by Harvard in March 2020. (Am. Cmplt. (Dkt. No. 46) at 7, ¶ 6; 8, ¶ 8) It is therefore clear on the face of the Amended Complaint that well before October 13, 2021, Plaintiff knew or reasonably should have known about potential fair representation claims premised on these allegations. See Buttry, 68 F.3d at 1492.

Accordingly, for all these reasons, the Union's motion to dismiss Plaintiff's duty of fair representation claims will be granted to the extent they are premised on conduct that took place prior to October 13, 2021.[8]

Plaintiff also alleges that the Union did not properly represent her at an NLRB arbitration concerning Harvard's suspension of her employment in March 2020. (See Am.

---

[8]  Judge Aaron also recommends dismissal to the extent that Plaintiff's fair representation claim is based on complaints about the Union's termination of her health insurance benefits. This Court agrees that Plaintiff's claims regarding her health insurance should be addressed to "the Local 32BJ benefit fund, [and] not the union." (R&R (Dkt. No. 83) at 20 n.10) (citing Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1199 (2d Cir. 1989) ("In a recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable."), and Ortiz v. Loc. 32BJ, No. 07-CV-08030 (LTS) (KNF), 2008 WL 2604810, at *4 (S.D.N.Y. June 25, 2008) (finding that Local 32BJ was not a proper party to member's claim for supplemental retirement benefits because benefit fund is separate legal entity from union)). Accordingly, Plaintiff's fair representation claim will be dismissed to the extent that it is premised on the termination of her health benefits.

Cmplt. (Dkt. No. 46) at 9-12, ¶¶ 11, 13, 17, 19, 20, 27)  While Judge Aaron construes these

allegations as raising a potential duty of fair representation claim, he concludes that any such

claim is "not yet ripe since [the arbitration] proceedings have not yet concluded."  (R&R (Dkt.

No. 83) at 20) (citing Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 163 (2d Cir. 1989))

> In Ghartey, the Second Circuit stated that

> a district court should [not] have to speculate on the outcome of an arbitration to
> make the necessary determination as to whether a union's breach [of the duty of
> fair representation] affected that outcome.  The better course is to permit the
> plaintiff claiming inadequate representation in an arbitration to wait until there
> has been some adverse outcome in the arbitration before seeking the intervention
> of a federal court.

Ghartey, 869 F.2d at 163 (footnote omitted).

> This Court agrees with Judge Aaron that any fair representation claim premised

on inadequate representation of Plaintiff at arbitration must await the conclusion of that

proceeding.  Accordingly, the Union's motion to dismiss Plaintiff's duty of fair representation

claim will be granted to the extent that it is based on allegations that the Union did not properly

represent her at an NLRB arbitration.

> Judge Aaron concludes that

> Plaintiff's remaining [duty of fair representation]-related claims do not plausibly
> allege that Local 32BJ engaged in conduct towards Plaintiff that was intentional,
> severe and unrelated to legitimate union objectives.  Nor does Plaintiff allege a
> causal connection between Local 32BJ's conduct and her injuries, as required.

(R&R (Dkt. No. 83) at 20) (citation omitted).

> This Court agrees with Judge Aaron's analysis.  The Amended Complaint alleges

only that the Union failed to respond to Plaintiff's requests for information between October 13,

2021 and 2023.  (Am. Cmplt. (Dkt. No. 46) at 10-13, ¶¶ 17, 21, 23-28)  Plaintiff also expresses

disagreement with the Union's decision to close certain grievances that she filed regarding

discrimination by Harvard and an "illegal layoff" by Harvard.[9] (Id. at 10-11, ¶¶ 17, 20)  But the Amended Complaint does not contain sufficient factual allegations regarding these incidents to plausibly demonstrate that the Union's actions were "arbitrary, discriminatory, or in bad faith." Sanozky, 415 F.3d at 282 (citation and quotation marks omitted).  Nor does the Amended Complaint articulate a causal connection between the Union's conduct and any injury suffered by Plaintiff.

Accordingly, this Court will adopt Judge Aaron's recommendation that Plaintiff's duty of fair representation claims against the Union be dismissed.

### 2.    <u>Discrimination Claims</u>

Plaintiff brings claims of race and national origin discrimination against the Union under Title VII, Section 1981, the NYSHRL, and the NYCHRL.  (Am. Cmplt. (Dkt. No. 46) at 6)

Judge Aaron recommends that Plaintiff's Title VII and Section 1981 claims be dismissed for failure to state a claim.  (R&R (Dkt. No. 83) at 22)  He also concludes that many of Plaintiff's Title VII claims are time-barred.  (Id.)  Having concluded that Plaintiff's federal claims against the Union should be dismissed, Judge Aaron does not address Plaintiff's discrimination claims against the Union under the NYSHRL and NYCHRL.  (Id. at 25-26)

### a.    <u>Appliable Law</u>

"Title VII claims against labor organizations are subject to an analysis different from that applicable to Title VII claims against employers."  Beachum v. AWISCO New York, 785 F. Supp. 2d 84, 103 (S.D.N.Y. 2011) (citation and quotation marks omitted), aff'd sub nom.

---

[9]  The "illegal layoff" allegations appear to relate to Harvard's Covid-19 pandemic-related lay-offs.  (See Am. Cmplt., Ex. 48 (Feb. 7, 2022 Ltr.) (Dkt. No. 46-1) at 71)

Beachum v. AWISCO New York Corp., 459 F. App'x 58 (2d Cir. 2012). "[W]here a plaintiff

claims that a union violated Title VII based on its failure to represent a member, courts in this

Circuit generally incorporate the duty of fair representation as one of the elements of the alleged

Title VII violation." Id. (citation and quotation marks omitted); see also Ross v. Commc'n

Workers of Am., Local 1110, No. 91 Civ. 6367(LAP), 1995 WL 351462, at *7 (S.D.N.Y. June 9,

1995) ("[T]he issue of whether a union breached its [duty of fair representation] is necessarily

involved in determining the validity of . . . a Title VII claim in which an employee complains

that her union failed properly to press her grievance against her employer."). The same approach

applies to Section 1981 discrimination claims brought against a union. Beachum, 785 F. Supp.

2d at 103.

   "To bring a Title VII discrimination claim against a union concerning the manner

in which the union handled a member's workplace complaints, the plaintiff must demonstrate

that (1) the Union breached its duty of fair representation to plaintiff; and (2) that the Union's

conduct was motivated by animus toward the plaintiff[']s protected status." Dillard v. SEIU

Loc. 32BJ, No. 15 CIV. 4132 CM, 2015 WL 6913944, at *4 (S.D.N.Y. Nov. 6, 2015). The same

standard applies to Section 1981 discrimination claims brought against a union. McIntyre v.

Longwood Cent. Sch. Dist., 658 F. Supp. 2d 400, 422 (E.D.N.Y. 2009), aff'd, 380 F. App'x 44

(2d Cir. 2010).

   However, courts must analyze NYCHRL and post-2019 amendment NYSHRL

claims "separately and independently from any federal . . . law claims." Mihalik, 715 F.3d at

109. As a result of the 2019 amendments, "the standard for [NYSHRL discrimination] claims

[is] closer to the standard of the NYCHRL" set forth below. Edelman, 2022 WL 4537972, at

*14 (citation and quotation marks omitted). Discrimination claims brought under the NYCHRL

"are to be reviewed more liberally than Title VII claims, and the provisions of [the NYCHRL]

must be construed broadly in favor of plaintiffs alleging discrimination." Levy, 408 F. Supp. 3d

at 217 (citation and quotation marks omitted); see also Edelman, 2022 WL 4537972, at *14.

"[W]here an adverse employment action is shown to be 'motivated by racial or ethnic animus,

even in part, the defendant may be held liable' under the NYCHRL." Williams, 171 A.D.3d at

992 (quoting Singh, 131 A.D.3d at 1161).

###### b.    Analysis

Judge Aaron concludes that the Amended Complaint does not

> adequately plead that Local 32BJ breached its [duty of fair representation], which
> is an independently fatal flaw in her Title VII and Section 1981 claims against
> Local 32BJ.  However, even assuming, arguendo, that Plaintiff adequately had
> alleged a breach of the [duty of fair representation], she has not pleaded facts
> from which the Court could even infer that Local 32BJ was motivated by animus
> towards her [race or] national origin. . . .

(R&R (Dkt. No. 83) at 22)

This Court finds no error in Judge Aaron's analysis.  Because the Amended

Complaint does not adequately allege a breach of the duty of fair representation, Plaintiff

likewise has not plausibly alleged a discrimination claim against the Union under Title VII and

Section 1981.

In any event, even if the Amended Complaint had adequately alleged a duty of

fair representation claim against the Union, Plaintiff's discrimination claims under Title VII,

Section 1981, the NYSHRL, and the NYCHRL would fail, because Plaintiff has not alleged facts

giving rise to even "a minimal inference of discriminatory motivation." Littlejohn, 795 F.3d at

311.

At best, the Amended Complaint alleges that Plaintiff subjectively believes that

the Union engaged in race and national origin discrimination.  (See Am. Cmplt. (Dkt. No. 46) at

6; 11, ¶ 18; 13, ¶ 29)  But as explained above, Plaintiff's subjective beliefs are "legally irrelevant" to her obligation to plead facts demonstrating discriminatory intent.  Farmer, 473 F. Supp. 3d at 328.  And Plaintiff's allegations regarding the Union's treatment of other Hispanic members are too remote in time and circumstances to support even a de minimis finding of discriminatory intent with respect to the Union's treatment of Plaintiff.  (See, e.g., Am. Cmplt. (Dkt. No. 46) at 13, ¶ 29)

Accordingly, and even under the more liberal standards applicable under the NYSHRL and the NYCHRL, the Amended Complaint's allegations are insufficient to plausibly allege that the Union's actions were "motivated by racial or ethnic animus, even in part." Williams, 171 A.D.3d at 992 (citation and quotation marks omitted).[10]

Judge Aaron also concludes that much of the conduct cited by Plaintiff in support of her Title VII claim falls outside the statute of limitations:

> On November 4, 2021, Cruz filed [her] . . . Charge [of discrimination] with the EEOC against Local 32BJ. (Am. Compl., Exh. 46-1, at PDF p. 69.) Because, as noted above, a charge under Title VII must be filed within 300 days after any alleged unlawful employment practice occurred, see Baroor, 362 F. App'x at 159, claims of discrimination by Local 32BJ that accrued prior to January 8, 2021 are time-barred under Title VII.

(R&R (Dkt. No. 83) at 22)  This Court agrees with Judge Aaron's analysis.

---

[10]  The Amended Complaint cites a 2018 text message in which Union representative Sandra Henao refers to Plaintiff as a "stupid Dominican."  (Am. Cmplt. (Dkt. No. 46) at 6)  However, the text message cited by Plaintiff was sent about two years before the 2020 to 2022 conduct that is the premise for Plaintiff's discrimination claims against the Union.  Moreover, the Amended Complaint does not allege that Sandra Henao had any involvement in the Union conduct that is the premise for Plaintiff's claims.  Given these circumstances, this Court agrees with Judge Aaron that the text message is "stale" and does not constitute evidence that the Union acted with discriminatory intent.  (See R&R (Dkt. No. 83) at 22 n.12)  The Court also notes that this text message was addressed by Judge Schofield in Cruz v. SEIU Loc. 32BJ, No. 19 CIV. 11836, 2021 WL 3604661 (S.D.N.Y. Aug. 12, 2021), and she concluded that it did not demonstrate that the Union had acted with discriminatory intent vis a vis Plaintiff.  Id. at *5 n.4

For all these reasons, this Court will adopt Judge Aaron's recommendation, and Plaintiff's Title VII, Section 1981, NYSHRL, and NYCHRL discrimination claims will be dismissed for failure to state a claim.[11]

### 3.    Retaliation Claims

Judge Aaron recommends that Plaintiff's retaliation claims against the Union under Title VII and Section 1981 be dismissed for failure to state a claim.  (R&R (Dkt. No. 83) at 22)  Judge Aaron does not address Plaintiff's retaliation claims under the NYSHRL and the NYCHRL.  (Id. at 24-25)

#### a.    Applicable Law

"To make out a prima facie case of retaliation by a union, a plaintiff must show that (1) she was engaged in an activity protected under Title VII and known to the union; (2) she suffered adverse union action; and (3) there was a causal connection between the protected activity and the union's actions." Agosto v. Corr. Officers Benev. Ass'n, 107 F. Supp. 2d 294, 309 (S.D.N.Y. 2000) (citing Yerdon v. Henry, 91 F.3d 370, 377 (2d Cir. 1996)).

Where retaliation claims are brought against a union, "[t]he term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." Dillard v. SEIU Loc. 32BJ, No. 15 CIV. 4132 CM, 2015 WL 6913944, at *8 (S.D.N.Y. Nov. 6, 2015) (citation and quotation marks omitted).

"[A]n adverse action by a union 'is one that affects the terms, privileges, duration, or conditions of employment.'" Agosto, 107 F. Supp. 2d at 309 (citing Yerdon, 91 F.3d at 377).

---

[11]  Having concluded that Plaintiff's NYSHRL and NYCHRL claims are properly dismissed for failure to state a claim, the Court does not reach the Union's argument that Plaintiff's state and city law discrimination claims are preempted by federal law.  (See Local 32BJ Br. (Dkt. No. 52) at 32-34)

An adverse action by a union "includes any breach of the duty of fair representation, including the failure to pursue a grievance and the failure to enforce rights under a collective bargaining agreement." Id. (citations omitted).  That is, "while a union may take an 'adverse action' against an employee by breaching its duty of fair representation to that employee, it also may do so by acting or failing to act in a way which materially and negatively impacts the terms and conditions of the union member's employment." Patrick v. Loc. Union No. 282, No. 99-CV-8314(NGG)(SMG), 2005 WL 2179415, at *5 (E.D.N.Y. Sept. 9, 2005).  In addition, under the NYCHRL, an "adverse employment action" includes any act that is "reasonably likely to deter a person from engaging in protected activity." N.Y.C. Admin. Code § 8-107(7).

Where retaliation claims are brought against a union, "[a] causal connection may be established either 'indirectly by showing that the protected activity was closely followed in time by the adverse action,'" or 'through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, or directly through evidence of retaliatory animus directed against a plaintiff by the defendant[.]'" Agosto, 107 F. Supp. 2d at 309 (first quoting Manoharan v. Columbia Univ. College of Physicians and Surgeons, 842 F.2d 590, 593 (2d Cir. 1988); next quoting Johnson v. Palma, 931 F.2d 203, 207 (2d Cir. 1991)).  "When considering causation, courts apply the same temporal-proximity analysis to NYCHRL and NYSHRL retaliation claims as they do to Title VII claims." Kraiem, 571 F. Supp. 3d at 60.

**b.    Analysis**

Judge Aaron concludes that Plaintiff "has not pleaded facts from which the Court could . . . infer that . . . Local 32BJ retaliated against her for opposing discrimination." (R&R (Dkt. No. 83) at 22)

Having reviewed the Amended Complaint, this Court finds that most of its allegations do not involve any "action[s] taken [by Plaintiff] to protest or oppose" alleged racial

or national origin discrimination by the Union. Agosto, 107 F. Supp. 2d at 309 (citation and quotation marks omitted). For example, the Amended Complaint alleges that Plaintiff complained that the Union had refused to provide her information about her rights under Communications Workers of America v. Beck[12] (Am. Cmplt., Ex. 2 (Dec. 2, 2019 NLRB complaint) (Dkt. No. 46-1) at 2); had threatened retaliation if Union members complained about Harvard's practices (Am. Cmplt., Ex. 9 (Jan. 31, 2020 NLRB complaint) (Dkt. No. 46-1) at 12); had not processed Plaintiff's grievance regarding Harvard's rotation of overtime (Am. Cmplt., Ex. 12 (Feb. 25, 2020 NLRB complaint) (Dkt. No. 46-1) at 15); had terminated Plaintiff's health insurance (Am. Cmplt., Ex. 30 (Sept. 8, 2020 NLRB complaint) (Dkt. No. 46-1) at 51); and had not processed Plaintiff's grievance regarding her suspension by Harvard. (Am. Cmplt., Ex. 31 (Sept. 24, 2020 NLRB complaint) (Dkt. No. 46-1) at 52) None of these allegations involves a complaint of race or national origin discrimination by the Union.

Indeed, the only facially plausible allegation of protected activity relates to Plaintiff's November 4, 2021 EEOC charge of discrimination, in which Plaintiff complains of racial discrimination by the Union. (Am. Cmplt., Ex. 46 (Nov. 4, 2021 EEOC complaint) (Dkt. No. 46-1) at 69).

As to alleged adverse action following the November 4, 2021 EEOC complaint, in a February 7, 2022 letter – more than three months later – the Union informed Plaintiff that her grievance arising from an alleged "[i]llegal layoff" by Harvard had been closed by the Union. (Am. Cmplt., Ex. 48 (Feb. 7, 2022 Local 32BJ Ltr.) (Dkt. No. 46-1) at 71)

---

[12] In Communications Workers of America v. Beck, 487 U.S. 735 (1988), the Supreme Court held that a collective bargaining agreement between an employer and a union cannot mandate that employees "support union activities beyond those germane to collective bargaining, contract administration, and grievance adjustment." Id. at 745.

Assuming arguendo that the Union's closing of Plaintiff's grievance constitutes an adverse action for purposes of her retaliation claim, the more than three-month gap between the EEOC complaint and the Union's letter defeats any inference of causation. While the Second Circuit "has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation," Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010), courts in this Circuit generally hold that a gap of more than three months defeats an inference of causation, particularly where there are no other allegations that support a retaliatory motive. See Hollander v. Am. Cyanamid Co., 895 F.2d 80, 85-86 (2d Cir. 1990) (finding no inference of causation in light of three-month gap where no "other evidence in the record[] tends to show that a retaliatory motive explains" the defendant's adverse action); Chukwueze v. NYCERS, 891 F. Supp. 2d 443, 457 (S.D.N.Y. 2012) ("[T]he temporal proximity between [plaintiff's] testimony [at a co-worker's discrimination hearing] and the alleged adverse employment action – somewhere between three and six months – is insufficient, standing alone, to establish a causal connection."); McDowell v. N. Shore–Long Island Jewish Health Sys., Inc., 788 F. Supp. 2d 78, 83 (E.D.N.Y. 2011) (dismissing a Section 1981 retaliation claim where "the alleged retaliatory act occurred more than three months after the alleged protected activity, and nothing in the complaint aside from the temporal proximity between these two events shows a retaliatory motive").

Here, the Amended Complaint pleads no facts – other than alleged temporal proximity – suggesting that the Union acted with a retaliatory motive in closing Plaintiff's grievance in February 2022. Given the more than three-month gap between Plaintiff's alleged protected activity and the Union's letter closing her grievance, Plaintiff has not plausibly alleged a causal connection between her protected activity and the alleged adverse action under Title

VII, Section 1981, the NYSHRL, or the NYCHRL.  See, e.g., Adams v. Equinox Holdings, Inc., No. 19-CV-8461 (AJN), 2020 WL 5768921, at *6 (S.D.N.Y. Sept. 28, 2020) (Even [under the NYCHRL] the plaintiff 'must still show that her employer was aware she engaged in a protected activity, and that there was a causal connection between the protected activity and the employer's subsequent action.'" (quoting Moccio v. Cornell Univ., 889 F. Supp. 2d 539, 592 (S.D.N.Y. 2012)); Thomson v. Odyssey House, No. 14-CV-03857 (MKB), 2015 WL 5561209, at *25 (E.D.N.Y. Sept. 21, 2015), aff'd, 652 F. App'x 44 (2d Cir. 2016) (under the NYCHRL, "a plaintiff still must allege a causal connection between the employer's action and the plaintiff's conduct"); Moccio, 889 F. Supp. 2d at 588, 592 (explaining that the "analysis of [plaintiff]'s retaliation claim under Title VII applies in full" to his retaliation claims under the NYSHRL and NYCHRL, and dismissing Title VII, NYSHRL and NYCHRL retaliation claims on causation grounds where termination occurred six months after protected activity).

The remaining alleged adverse actions post-dating Plaintiff's November 4, 2021 EEOC complaint involve the Union's alleged failure to respond to her requests for information on several occasions between February 2022 and January 2023.  (Am. Cmplt. (Dkt. No. 46) at 10-13, ¶¶ 17, 21, 23-28)  All of the Union's alleged failures to respond took place more than three months after Plaintiff filed her EEOC complaint.  Accordingly, even assuming arguendo that a failure to respond to a request for information could constitute an adverse action for purposes of a retaliation claim, Plaintiff has not plausibly alleged a causal connection between the Union's alleged failures to respond and the filing of her EEOC complaint.[13]

_____

[13]  The Amended Complaint also alleges that Plaintiff filed an EEOC complaint against the Union in July 2019.  (Am. Cmplt. (Dkt. No. 46) at 7, ¶ 3)  Plaintiff has not provided a copy of the July 2019 EEOC complaint nor has she described the nature of the allegations it contains, other than that they relate to "discriminatory" treatment.  In any event, the Amended Complaint

The Court concludes that the Amended Complaint does not plausibly allege a prima facie case of retaliation by the Union under Title VII, Section 1981, the NYSHRL, or the NYCHRL. Moreover, Plaintiff's retaliation claim under Title VII is time-barred to the extent it is premised on adverse action that occurred prior to January 8, 2021. (See R&R (Dkt. No. 83) at 22)[14] Accordingly, the Union's motion to dismiss Plaintiff's retaliation claims under Title VII, Section 1981, the NYSHRL, and the NYCHRL will be granted.

### 4.    LMRDA Claim

Judge Aaron construes the Amended Complaint as raising a claim for retaliation under Title I of the LMRDA, and recommends that any such claim be dismissed for failure to state a claim. (R&R (Dkt. No. 83) at 23-24)

### a.    Legal Standard

Section 101 of the LMRDA provides:

> Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings. . . .

29 U.S.C. § 411(a)(2). The LMRDA provides a private right of action for violations of this provision. Id. § 412.

---

does not allege a causal connection between the alleged July 2019 EEOC complaint and any adverse action taken by the Union. The first alleged adverse action taken by the Union after July 2019 is the failure of Union Vice President Dennis Johnston to respond to Plaintiff's November 18, 2019 request for information about Beck rights. (Am. Cmplt. (Dkt. No. 46) at 6, ¶ 1) For the reasons explained above, the four-month gap between the July 2019 EEOC complaint and the Union's failure to respond defeats any inference of causation.

[14] Because this Court has concluded that Plaintiff's NYSHRL and NYCHRL retaliation claims fail to state a claim, it does not reach the Union's argument that those claims are preempted by federal law. (See Local 32BJ Br. (Dkt. No. 52) at 32-34)

"The purpose of Title I, as evidenced by its legislative history, was to protect union members from oppressive union leadership while preserving the union's right to adopt reasonable rules of governance." Messina v. Loc. 1199, SEIU, Nat'l Health & Hum. Serv. Emp. Union, AFL-CIO, 205 F. Supp. 2d 111, 118 (S.D.N.Y. 2002) (citing United Steelworkers of Am., AFL-CIO-CLC v. Sadlowski, 457 U.S. 102 (1982)). Title I seeks to "further the basic objective of the LMRDA: 'ensuring that unions [are] democratically governed and responsive to the will of their memberships.'" Helmer v. Briody, 759 F. Supp 170, 176 (S.D.N.Y. 1991) (quoting Sheet Metal Workers' Int'l Ass'n v. Lynn, 488 U.S. 347, 352 (1989)).

To state a claim for retaliation under Section 101 of the LMRDA, a plaintiff must plead facts demonstrating the following: "(1) [her] conduct constituted 'free speech' under the LMRDA; (2) that the speech was a cause for the Union taking action against him; and (3) damages." Commer v. McEntee, No. 00-CV-07913 (RWS), 2006 WL 3262494, at *10 (S.D.N.Y. Nov. 9, 2006) (citation and quotation marks omitted).

### b.  **Analysis**

Judge Aaron concludes that Plaintiff has failed to state a claim under Section 101 of the LMRDA, reasoning as follows:

> In her Amended Complaint, Plaintiff does not mention the LMRDA. However, Plaintiff alleges that, in September 2021, after she sued Local 32BJ in her prior, now-dismissed lawsuit, Plaintiff's name was omitted from the eligible voter list and she "could not cast [her] ballot." (Am. Compl. at PDF pp. 9-10, ¶ 15.) Plaintiff further alleges that she was told that "the ballot had to be received by mail only." (Id.) The Court construes these allegations as seeking to assert a retaliation claim under the LMRDA. The Court recommends that this claim be dismissed because Plaintiff has not plausibly alleged the required causal link between her speech and Local 32BJ denying her the ability to vote. Specifically, she fails to allege that she was treated differently from any other voter regarding election ballots. See Hussein v. Hotel Emples. & Rest. Union, Loc. 6, 108 F. Supp. 2d 360, 366 (S.D.N.Y. 2000), vacated on other grounds, 14 F. App'x 39 (2d Cir. 2001) ("In considering the 'causal link' element of the prima facie case, the absence of selective prosecution or dissimilar treatment defeats a claim of retaliation under the LMRDA.").

> The allegations contained in Plaintiff's proposed SAC regarding how Plaintiff was treated on May 2, 2023 also do not state an LMRDA claim. Plaintiff alleges that security officers "escorted [her] out" of the headquarters of Local 32BJ because she was "not an [active] member." (SAC at PDF p. 1, ¶ 2.) These allegations also fail to allege that she was treated differently from any other inactive union members.

(R&R (Dkt. No. 83) at 24)

This Court finds no error in Judge Aaron's analysis. Accordingly, the Union's motion to dismiss Plaintiff's retaliation claim under Section 101 of the LMRDA will be granted.

C.    **Hybrid Claim Against Harvard and the Union**

The Amended Complaint alleges that Harvard and the Union violated Section 301 of the LMRA by breaching the collective bargaining agreement. (Am. Cmplt. (Dkt. No. 46) at 1, 6) Judge Aaron construes the Amended Complaint as alleging a hybrid Section 301/duty of fair representation claim, and recommends that any such claim be dismissed as time-barred and for failure to state a claim. (R&R (Dkt. No. 83) at 27)

1.    **Applicable Law**

"Breach of contract claims that arise out of a collective bargaining agreement are governed by § 301 of the Labor Management Relations Act." Chaney v. Greyhound Lines, Inc., No. 09 CV 7593 (HB), 2010 WL 2541369, at *2 (S.D.N.Y. June 23, 2010). "To ensure that such disputes are resolved uniformly, the Supreme Court has determined that § 301 preempts state law claims that require the interpretation of a collective bargaining agreement." Chopra v. Display Producers, Inc., 980 F. Supp. 714, 719 (S.D.N.Y. 1997); see also Allis-Chalmers Corp. v. Leuck, 471 U.S. 202, 220 (1985) ("[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, . . . or dismissed as pre-empted by federal labor-contract law." (citation omitted)).

Before a union-represented employee may sue her employer for breach of a collective bargaining agreement, she ordinarily must "attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement." DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 163 (1983). This exhaustion requirement is excused, however, "if plaintiff can show that the failure to arbitrate or the unsuccessful result in that forum was due to the Union's wrongful conduct, that is, a breach of its duty to represent plaintiff fairly." Young v. U.S. Postal Serv., 907 F.2d 305, 307 (2d Cir. 1990).

In such circumstances, a plaintiff may bring a "hybrid § 301/fair representation claim" against the employer for breach of the CBA under Section 301 of the LMRA and against the union for "breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act." DelCostello, 462 U.S. at 164-65; see also Carrion v. Enter. Ass'n, Metal Trades Branch Loc. Union 638, 227 F.3d 29, 33 (2d Cir. 2000) ("Such suit, which alleges that the employer breached the CBA and that the union breached its duty of fair representation, is known as a hybrid § 301/fair representation claim."). Accordingly, where a union-represented employee "alleges a 'breach of contract,' apparently in reference to a collective bargaining agreement . . . , courts analyze 'breach of contract' claims as hybrid claims against an employer and a union." Cano v. SEIU Loc. 32BJ, No. 19 CIV. 8810(PAE)(KHP), 2021 WL 4480274, at *12 (S.D.N.Y. Sept. 30, 2021); see also Carrion, 227 F.3d at 34 ("Where, as here, the 'nature of the claim' is that the employer breached the CBA and that the union breached its duty to enforce the CBA," plaintiff "has alleged a hybrid § 301/fair representation claim."); Lomako v. N.Y. Inst. of Tech., No. 09 Civ. 6066 (HB), 2010 WL 1915041, at *7 (S.D.N.Y. May 12, 2010) ("[A]n employee may bring a claim against his employer . . . alleging that it breached a collective bargaining agreement, but because such claims require interpretation

of the terms of the CBA, they are governed under the LMRA, and not ordinary breach-of-contract principles.").

"To prevail on a hybrid § 301/duty of fair representation claim, [a plaintiff] must demonstrate both (1) that [the employer] breached its collective bargaining agreement and (2) that [the union] breached its duty of fair representation." Sanozky, 415 F.3d at 282. Plaintiff "must further establish that any damages he [or she] suffered were caused by the union's breach." Id. at 283. Such claims are subject to a six-month statute of limitations. DelCostello, 462 U.S. at 172.

### 2. Analysis

Judge Aaron concludes that Plaintiff's hybrid Section 301 claim should be dismissed, reasoning as follows:

> First, insofar as the claim is based upon alleged breaches of the CBA that occurred prior to October 13, 2021, the claim is barred by the six-month statute of limitations. This includes Plaintiff's claims that Harvard violated the CBA by failing to post the two Forelady positions and any claim that Harvard breached the CBA by laying off members (see Am. Compl. at PDF pp. 1-2, ¶ 5 & PDF p. 3, ¶ 12), all of which occurred in 2020. Second, Plaintiff has failed to plead a [duty of fair representation] claim against Local 32BJ, which is fatal to her hybrid Section 301 claim. See Vaughn v. Am. Tel. & Tel. Co., 92 F. App'x 21, 23 n.1 (2d Cir. 2004) (concluding that court "need not reach the issue of whether [the employer] breached the CBA" due to plaintiff's failure to state [duty of fair representation] claim against union).

(R&R (Dkt. No. 83) at 27)

This Court finds no error in Judge Aaron's analysis. The alleged violations of the collective bargaining agreement (see Am. Cmplt (Dkt. No. 46) at 1-3, ¶¶ 1, 3, 12; 5, ¶ 25; 7-8, ¶¶ 4, 7) all took place well before October 13, 2021, which is the date six months before Plaintiff filed the Complaint on April 13, 2022. (Dkt. No. 2) And for all of the reasons stated above, the Amended Complaint does not plausibly allege a duty of fair representation claim against the Union.

46

Accordingly, the motions by Harvard and the Union to dismiss Plaintiff's hybrid Section 301 claim will be granted.

## III. <u>LEAVE TO AMEND</u>

Judge Aaron recommends that Plaintiff be granted leave to amend, reasoning as follows:

> In opposition to the pending motions to dismiss, Plaintiff seeks further leave to amend.  (<u>See</u> Pl.'s 6/15/23 Harvard Opp. at 11; Pl.'s 6/15/23 32BJ Opp. at 11.) Even though Plaintiff already has amended her complaint twice, she has not yet done so with the benefit of a judicial ruling in this case.  Particularly given her <u>pro se</u> status, it is respectfully recommended that Plaintiff be granted leave to amend. <u>See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec. LLC</u>, 797 F.3d 160, 190 (2d Cir. 2015) ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies.").

(<u>Id.</u>)

Harvard objects to Judge Aaron's recommendation that Plaintiff be granted leave to amend, arguing that any further amendment would be futile.  (Harvard Obj. (Dkt. No. 89) at 5)[15]

---

[15]  Harvard also argues that Plaintiff should be denied leave to amend because she has not demonstrated "good cause" under Rule 16(b) under the Federal Rules of Civil Procedure. (Harvard Obj. (Dkt. No. 89) at 12-15)

Fed. R. Civ. P. 15(a)(2) directs courts to "freely give leave [to amend] when justice so requires." But when a court has "issued a scheduling order pursuant to Rule 16" that addresses, <u>inter alia</u>, the requirements for filing an amended complaint, "the schedule may be modified 'only for good cause and with the judge's consent.'" <u>Feuer v. Cornerstone Hotels Corp.</u>, No. 14CV5388JFBSIL, 2017 WL 3841841, at *3 (E.D.N.Y. Aug. 4, 2017).

Here, on May 11, 2023, after Harvard and the Union filed their motions to dismiss the Amended Complaint, Plaintiff requested leave to file a second amended complaint to address an incident on May 2, 2023, when she was removed from the Union's headquarters.  (Dkt. No. 66)  On May 17, 2023, Judge Aaron denied Plaintiff's request without prejudice, stating that Plaintiff "may seek leave to file a Second Amended Complaint.  If Plaintiff seeks such leave, she shall file a proposed Second Amended Complaint with her opposition papers."  (May 17, 2023 Order (Dkt. No. 70))  Plaintiff then filed a proposed second amended complaint with her opposition papers.

This Court agrees in part with Harvard's objection.  To the extent that Plaintiff's claims are dismissed on timeliness or statute of limitations grounds, Harvard's objection is sustained.  But to the extent that Plaintiff's claims have been dismissed because of the inadequacy of her factual allegations, Harvard's objection is overruled.  In light of Plaintiff's <u>pro se</u> status, and the fact that this will be her first opportunity to amend with the benefit of a judicial ruling, it is appropriate to allow Plaintiff an additional opportunity to amend in order to address those claims that are not time-barred.

Accordingly, Plaintiff is granted leave to move to amend regarding the following claims:

- her Section 1981, NYSHRL, and NYCHRL claims against Harvard and the Union;

- her LMRDA claim against the Union;

- her Title VII claims against Harvard and the Union, but only with respect to claims arising on or after January 8, 2021;

---

(Dkt. No. 71)  The proposed second amended complaint includes allegations related to the May 2, 2023 incident, as well as new factual allegations unrelated to that incident.  (<u>Id.</u>)

Harvard complains that the proposed second amended complaint "is comprised of an assortment of disparate factual allegations that are untethered to any new or previously asserted causes of action and is devoid of any reference to the causes of action [alleged in the Amended Complaint]."  (Harvard Obj. (Dkt. No. 89) at 13)  In sum, Harvard contends that Plaintiff has not complied with Judge Aaron's May 17, 2023 order and that she must now demonstrate "good cause" under Rule 16 in order to file a second amended complaint.  (<u>Id.</u>)

This Court finds that Plaintiff substantially complied with Judge Aaron's order.  He directed that she attach a proposed second amended complaint to her opposition papers, and that is what she has done.  While (1) the new content in the proposed second amended complaint goes beyond the May 2, 2023 incident; and (2) the proposed second amended complaint does not clearly set forth Plaintiff's new claims, Harvard has not demonstrated that Plaintiff – particularly in light of her <u>pro se</u> status – has intentionally disobeyed Judge Aaron's order.  Accordingly, application of the "good cause" requirement of Rule 16(b) is not warranted.

- her duty of fair representation claim against the Union, but only with respect to claims arising on or after October 13, 2021; and

- her hybrid Section 301/duty of fair representation claim against Harvard and the Union, but only with respect to claims arising on or after October 13, 2021.

## **CONCLUSION**

For the reasons stated above, this Court adopts the R&R in part. Harvard's motion to dismiss Plaintiff's retaliation claims under Section 1981, the NYSHRL, and NYCHRL is denied. Defendants' motions to dismiss are otherwise granted. Plaintiff is granted leave to move for leave to file a second amended complaint.[16] Plaintiff will file any such motion by **October 30, 2024**, and the proposed second amended complaint is to be attached as an exhibit to Plaintiff's motion. In seeking leave to file a second amended complaint, Plaintiff will carefully consider the defects this Court has identified in her Amended Complaint and proposed second amended complaint.

The Clerk of Court is directed to terminate the motions (Dkt. Nos. 50, 54).

Dated: New York, New York
         September 30, 2024

                         SO ORDERED.

                         _Paul R. Gardephe_
                         Paul G. Gardephe
                         United States District Judge

---

[16] The proposed new pleading would be a second amended complaint, because Plaintiff never obtained permission to file a second amended complaint. Judge Aaron granted her leave to submit a "proposed Second Amended Complaint." (May 17, 2023 Order (Dkt. No. 70)) As discussed above, the proposed second amended complaint submitted by Plaintiff contains a number of defects that must be corrected in any subsequent proposed second amended complaint that Plaintiff submits in connection with her motion for leave to amend.